UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN BOYKINS,

      Plaintiff,

v.

JOSHUA A. BUSKIRK, CHERI
L. BORDEAU, SUSAN B.
McCAULEY, and ERVIN BELL,

      Defendants.

_____/

Case No. 4:20-cv-13197
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 30, 34)[1]

I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Brian Boykins (Boykins), proceeding *pro se*, is currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan. Boykins' claims arise from events occurring in 2017 and 2018 at the Saginaw Correctional Facility (SRF). (ECF No. 1). Boykins alleges that Defendants Tom Winn (Winn), Joshua A. Buskirk (Buskirk), Cheri L. Bordeau (Bordeau), Susan B. McCauley (McCauley), Ervin

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

Bell (Bell), and Corizon Medical, Inc. (Corizon) were deliberately indifferent to his serious medical needs, specifically by denying him a bottom bunk accommodation, which led to him falling from the top bunk and injuring his wrist. (*Id.*).  He also says that he was retaliated against for filing grievances regarding the bunk accommodation.  (*Id.*).[2]

Pretrial matters were referred to the undersigned under 28 U.S.C. § 636(b)(1) on February 22, 2022.  (ECF No. 26).  Before the Court are Buskirk's motion for summary judgment and a separate motion for summary judgment by Michigan Department of Corrections (MDOC) employees, Bell, Bordeau, and McCauley (collectively "the MDOC Defendants").  (ECF Nos. 30, 34).  Boykins filed a response to both motions, with a filing titled "Motion Requesting Denial of Defendant's Request for Summary Judgment."  (ECF No. 37).  Buskirk filed a reply, (ECF No. 38), and Boykins filed a surreply, (ECF No. 40).  The matter is now ready for decision.  For the reasons that follow, the undersigned RECOMMENDS that Defendants' motions for summary judgment be GRANTED and that Boykins' claims be DISMISSED.

---

[2] Boykins' claims against Winn and Corizon were summarily dismissed.  (ECF No. 5).

## II.     Background

### A.     Bottom Bunk Accommodation

Boykins says that he was transferred to SRF on July 14, 2017.[3]  Upon

arrival, his medical intake screening was conducted by Bordeau, an MDOC nurse.

He informed Bordeau that he had a permanent bottom bunk accommodation due to

his history of heart valve transplant and herniated lumbar disk.  Bordeau stated that

this accommodation was not in his records and that he could address this with his

medical provider when he was seen.  (ECF No. 1, PageID.5-6).  Exhibit A-1 of the

MDOC Defendants' motion indicates that Boykins' transfer paperwork included

no mention of a bottom bunk accommodation.  (ECF No. 34-2, PageID.356-357).

The Special Needs Identification Screening demonstrates that his only special

housing need was a cotton blanket because he was listed as being at risk for heat-

related illness.  (ECF No. 31, PageID.168-170).

Records indicate that Boykins first saw his medical provider, physician

assistant Buskirk, on September 6, 2017.  Office notes indicate that Boykins was

seen regarding his need for Coumadin (anticoagulant) treatment and for bunions in

both feet.  He requested a podiatrist evaluation and mentioned that he had not yet

---

[3] The MDOC Defendants note that the complaint appears to state that Boykins was transferred in 2007, but this does not align with his actual date of transfer which was July 14, 2017, (ECF No. 34-2), or the other events in the complaint, which take place in 2017 and 2018, (ECF No. 34, PageID.208).

received the tennis shoes he was approved for, but that they had not helped him in the past. Buskirk reviewed his files, noting that he had been treated with deep toe box shoes since 2015, and that he had an old accommodation for tennis shoes in 2008. Boykins was informed that his tennis shoes had been ordered and that if his bunion symptoms did not improve, he could request further evaluation. Boykins alleges that he requested a bottom bunk accommodation at this time, but the office notes do not reflect this request. (ECF No. 1, PageID.6; ECF No. 34-2, PageID.302-305). Buskirk saw Boykins on four additional occasions before his fall, with records reflecting various complaints but no recorded mention of a bottom bunk request or accommodation. (ECF No. 30, PageID.155-156).

Boykins alleges that in August or September of 2017, he sent correspondence to McCauley noting his permanent bottom bunk accommodation and that his electronic medical record would indicate this. He further noted in this correspondence that he had wrongfully been assigned a top bunk at SRF despite his history of heart valve impingement and herniated lumbar disk. (ECF No. 1, PageID.6-7).

The parties do not dispute that on December 21, 2017, Boykins was seen by Buskirk and nurse Curtina Jones after he fell from the top bunk when the chair he was using to get down slipped out from under him. Buskirk ordered a splint and an x-ray for Boykins' wrist, and placed Boykins on a bottom bunk detail. On

4

December 27, 2017, Boykins' x-ray revealed an old ulnar fracture, but no acute

fracture or acute osseous abnormality.  (ECF No. 1, PageID.7-8; ECF No. 34,

PageID.210; ECF No. 30, PageID.156-157).

B.    Legal Writer

On January 3, 2018, Boykins sent a request to Bell requesting paperwork for

legal writer assistance.  (ECF No. 1, PageID.8-9; ECF No. 34-3, PageID.364-365).

Bell provided Boykins with the necessary form to request a legal writer, which

Boykins filled out and returned on January 23, 2018.  (ECF No. 34-3, PageID.359).

The parties agree that under MDOC Policy Directive 05.03.116, prisoners are

eligible for a legal writer if they do not have a verified GED or high school

diploma; do not read or write English; have a physical or mental impairment that

may affect their ability to use the law library to prepare legible and coherent

pleadings; or if they are housed in segregation, a reception center, an inpatient

medical unit, or other housing that does not allow direct access to legal materials.

*See* MDOC Policy Directive 05.03.116, ¶¶ R and S, at ECF No. 34-3, PageID.369-

370.  Boykins requested a legal writer due to the physical impairment of his wrist

injury.  (ECF No. 34-3, PageID.365).

Bell determined that Boykins did not meet the other criteria for a legal writer

but forwarded his request to McCauley to assess his physical impairment claim.

(*Id*., PageID.360, 365).  McCauley determined that Boykins did not have a

5

physical impairment that would impair his "ability to work in the law library or to file a coherent pleading." (*Id*.).

Boykins claims that in denying his application for a legal writer, Bell told him he "should not have wrote grievance [sic]." (ECF No. 1, PageID.9). Bell swears by affidavit that Boykins' request was denied because he did not meet the criteria set forth above for obtaining a legal writer, and not because he had filed grievances. (ECF No. 34-3, PageID.361). The parties agree that Boykins filed grievances regarding this denial, and the MDOC Defendants note that these grievances were legible and coherent. (ECF No. 1; ECF No. 34, PageID.212-213, 226).

## III.    Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Boykins is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under [*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

IV.    Analysis

7

A.      The Parties' Arguments[4]

The MDOC Defendants contend that Bordeau and McCauley's action related to the denial of Boykins' bottom bunk accommodation before his wrist injury did not rise to the level of deliberate indifference to a serious medical need. They also contend that their actions related to the rejection of Boykins' legal writer request were non-retaliatory and based on objective application of the legal writer criteria under MDOC Policy Directive 05.03.116.

Buskirk argues that there is no evidence to corroborate Boykins' claim that a bottom bunk accommodation was medically necessary or that Boykins ever requested such an accommodation before his injury.

Boykins responds that he was ordered a permanent bottom bunk accommodation on June 5, 2009, which was only "discontinued" when he was transferred to Michigan Reformatory (RMI), a facility that did not have bunk beds.

---

[4] This Report and Recommendation addresses Defendants' arguments regarding deliberate indifference and retaliation below.  The MDOC Defendants have also raised the defenses of Eleventh Amendment immunity and qualified immunity.  If any of Boykins' claims survived dismissal, which the undersigned finds they do not, those claims as to defendants in their official capacities would be barred by the Eleventh Amendment.  *See Brandon v. Holt*, 469 U.S. 464, 471 (1985).  Further, because the undersigned finds that no constitutional violations have occurred, Defendants are also entitled to qualified immunity.  *See Simmons v. McCumber-Hemry*, No. 2:18-CV-11040, 2022 WL 1043867, at *6 (E.D. Mich. Jan. 7, 2022), *report and recommendation adopted sub nom. Simmons v. Brewer*, 2022 WL 882161 (E.D. Mich. Mar. 24, 2022) (finding the qualified immunity defense satisfied where plaintiff failed to show violation of a constitutional right).

He also argues that because of his chronic lower back condition and high risk of bleeding due to Coumadin treatments, Buskirk should have renewed his bottom bunk accommodation at SRF.

### B.     Deliberate Indifference

#### 1.     General

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id*.

Boykins' claims sound in deliberate indifference under the Eighth Amendment of the U.S. Constitution. Under this amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment—one objective and one subjective. "First, the deprivation alleged must be, objectively, 'sufficiently serious.' A prison official's act or

omission must result in the denial of 'the minimal civilized measure of life's necessities.' " *Farmer*, 511 U.S. at 834 (cleaned up).  "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (internal quotation marks and citations omitted).  There must also be an actual injury to the plaintiff, and it must be proximately caused by the defendants. *Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 729 (6th Cir. 2022).

Second, "a prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

> The subjective component requires a showing that the official knew of and disregarded an excessive risk to inmate health or safety.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  An express intent to inflict unnecessary pain is not required.  Rather, obduracy and wantonness are required to make a showing of deliberate indifference.  An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Richmond*, 885 F.3d at 939 (cleaned up).  Deliberate indifference sits "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer*, 511 U.S. at 836.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*.

10

2.     Bordeau

Boykins alleges that in his initial screening by Bordeau upon being

transferred to SRF, he was given a copy of his "special accommodation notice,"

which listed devices, supplies, and other services necessary to meet his medical

needs but did not include a bottom bunk accommodation.  (ECF No. 1, PageID.6).

He claims to have told Bordeau that the bottom bunk detail was missing and

requested that she grant him the accommodation, but she stated that he would have

to "take this up with [his] medical provider" upon being seen in the clinic.  (*Id*.).

Defendants do not dispute that this conversation took place but note that Boykins'

transfer documents did not include a bottom bunk accommodation upon his

transfer to SRF.  (ECF No. 34-2, PageID.356-357).  This is corroborated by an

exhibit attached to Boykins' complaint, a Step I grievance response from January

25, 2018, which states that his bottom bunk accommodation had been discontinued

on October 22, 2015, while Boykins was housed at MBP (Marquette Branch

Prison).  (ECF No. 1, PageID.20).

Boykins counters that his bottom bunk accommodation was removed when

he was transferred to RMI, where there were no bunk beds and therefore no need

for such an accommodation.  (ECF No. 37, PageID.405).  He states that regardless

of the removal of his accommodation, which is verified by the evidence submitted

by both parties, Bordeau "was required to review [his] medical file" and "alert

facility control center staff regarding [his] medical need for [a] bottom bunk." (*Id.*, PageID.399).

Despite Boykins' claims, he has failed to show that Bordeau knew of and recklessly disregarded the substantial risk of serious harm that could follow from Boykins' placement in a top bunk.  While there is evidence of his former bottom bunk accommodation, (ECF No. 37, PageID.416), there is no evidence beyond Boykins' assertion that Bordeau knew of the former accommodation, and as the uncontroverted evidence submitted by both parties shows, this accommodation had been rescinded and was not present on Boykins' transfer documents.  While Boykins offers a reasonable explanation for the removal of said accommodation, this does not affect the subjective component of his deliberate indifference claim against Bordeau; there is simply no evidence that Bordeau was aware of the prior accommodation[5] or the stated reason for its removal.  Further, because Boykins was not injured between his intake screening and his medical assessment by Buskirk, any indifference on Bordeau's part during the screening would not have been the proximate cause of Boykins' injury.  *Westmoreland*, 29 F.4th at 729.  A

---

[5] Boykins' assertions in his complaint are not evidence for the purposes of deciding a summary judgment motion because his complaint was not verified.  A complaint becomes a verified complaint when a plaintiff "sign[s] his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746."  *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

reasonable juror could not conclude otherwise.  Thus, Bordeau is entitled to summary judgment on Boykins' claims against her.

### 3.      McCauley

Regarding his lack of bottom bunk accommodation at SRF, Boykins says that he sent a written correspondence, or "kite," to McCauley in or around August or September 2017, indicating that he should have a bottom bunk based on his former, permanent accommodation and his underlying health issues.  (ECF No. 1, PageID.7).  However, the electronic record submitted by the MDOC Defendants does not contain a kite regarding that issue being submitted before Boykins' injury.  Rather, the record shows that from July 2017 to December 21, 2017, Boykins only kited regarding his foot pain and need for athletic shoes.  (ECF No. 34-2, PageID.286, 313, 325, 329).  McCauley swears by affidavit that the record is true and correct and that she received no communication from Boykins regarding a bottom bunk accommodation before his injury.  (*Id.*, PageID.235-236).

Aside from Boykins' assertion in a surreply to Buskirk's motion that "All Defendants knew of Boykins' medical history," (ECF No. 40, PageID.494) (emphasis in original), Boykins does not address McCauley's defense to his claims.  This essentially "constitutes waiver or abandonment of the argument." *Beydoun v. Countrywide Home Loans, Inc.*, No. 09-10445, 2009 WL 1803198, at *3 (E.D. Mich. June 23, 2009) (internal quotation marks and citation

omitted).  Furthermore, without an affidavit or verified complaint, Boykins has presented no evidence that he did in fact communicate his concerns to McCauley before his injury.  "Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment."  *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Thus, Boykins falls short of establishing the subjective prong of his deliberate indifference claim against McCauley.  Additionally, like Bordeau, McCauley was not the proximate cause of Boykins' injury, because Boykins later met with Buskirk, his physician assistant who did not assign him a bottom bunk accommodation.  Reasonable minds could not differ.  Thus, McCauley is entitled to summary judgment.

### 4.   Buskirk

Boykins levels what is perhaps his strongest claim of deliberate indifference against physician assistant Buskirk.  Boykins says that when he saw Buskirk at clinic shortly after his transfer to SRF, he was denied a bottom bunk accommodation because it was not related to chronic care.  (ECF No. 1, PageID.6). Buskirk responds, stating that in his four clinic visits with Boykins before his fall, a bottom bunk accommodation was never discussed.  (ECF No. 30, PageID.155-

14

156).  Buskirk's version is supported by the records from those visits, (ECF No. 31, PageID.173-175, 177-179, 180-182, 184-185 (SEALED)), and Buskirk's affidavit testimony, (ECF No. 30-2, 165-166).  Upon falling from his bunk, Buskirk saw Boykins and ordered an x-ray, provided Tylenol for discomfort, and ordered a bottom bunk accommodation for Boykins because of his wrist injury. (ECF No. 30-2, PageID.166; ECF No. 31, PageID.192-195).

Buskirk argues that as to the objective prong, there is no medical evidence to corroborate Boykins' claim that he needed a bottom bunk accommodation before his injury.  (ECF No. 30, PageID.159).  Subjectively, Buskirk notes that a bottom bunk detail was not requested, and that his care was appropriate for the medical history, symptoms, and complaints presented to him by Boykins.  (*Id.*, PageID.160).  He argues that this is an instance of the patient disagreeing with the judgment of his health care provider, which is not sufficient to sustain a deliberate indifference claim.  *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).

In response, Boykins argues that Buskirk, as his primary medical provider, should have been aware of his prior bottom bunk accommodation, and that Buskirk was aware of his chronic back conditions and Coumadin therapy that necessitated such an accommodation.  (ECF No. 37, PageID.401-402).  He also contends that Buskirk violated MDOC Policy Directive 04.06.160 by allowing Boykins' valid

medical detail to be canceled without first examining him.  (*Id*., PageID.402-403).
Boykins reiterates that his bottom bunk accommodation was only removed because
of his transfer to a facility that does not have bunkbeds.  (*Id*., PageID.405).

In his reply, Buskirk notes that in addition to not having a bottom bunk
detail upon transfer, Boykins' record also did not reflect a chronic lower back
condition.  Boykins' "current chronic problems" as of his transfer to SRF were
listed as "S/P Valve Replacement" and "Long-term use of anticoagulants," and his
only listed accommodation was for a cotton blanket for warmth.  (ECF No. 31,
PageID.168-170).  Boykins' treatment records show no complaints or assessments
of lower back pain before his fall; the only conditions Buskirk assessed were
related to the Coumadin clinic and Boykins' complaints of bunions.  (*Id*.,
PageID.171-186).

Boykins does not argue that his Coumadin therapy and bunions would alone
require a bottom bunk accommodation.  However, even if he did, this argument
would fall short in light of the absence of a bottom bunk request before the date of
his fall.  Rather than point to any record evidence showing that he requested a
bottom bunk accommodation, Boykins simply asserts that Buskirk reviewed his
entire medical file, knew his injury history, and should have inferred the need for a
bottom bunk accommodation.  (ECF No. 37, PageID.403-404).  He also states that
he attempted to discuss his bottom bunk detail with Buskirk on September 6, 2017.

16

(*Id.*, PageID.399). In surreply, Boykins reasserts that "all defendants knew of Boykins medical history" including the MDOC transport van accident that caused his back injury. (ECF No. 40, PageID.494) (emphasis in original). He states that a reasonable treater with this knowledge would infer the need for a bottom bunk accommodation. (*Id.*). However, Boykins has offered no evidence that Buskirk had knowledge of his medical history or accident, nor that he discussed a bottom bunk accommodation with Buskirk before his fall, and the evidence before the Court belies these assertions.

While ordinarily the evidence is construed in the light most favorable to the nonmoving party on a motion for summary judgment, *Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011), where there are conflicting stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 550 U.S. 372, 380 (2007). A claim that is "blatantly contradicted by objective evidence in the record . . . fails to create a genuine issue of material fact for trial." *Coble*, 634 F.3d at 869. Here, construing the evidence in the light most favorable to Boykins does not allow the Court, or a reasonable trier of fact, to accept Boykins' story. His assertion that he requested a bottom bunk accommodation is belied by the absence of any kite, grievance, communication, or indication in the medical record that he did so. His

claim that Buskirk wrongfully removed his bottom bunk accommodation cannot survive while the evidence clearly shows the accommodation's removal years before his treatment by Buskirk.  As such, Boykins has failed to create a genuine issue of material fact for trial as to whether Buskirk was deliberately indifferent. Thus, Buskirk is entitled to summary judgment on this claim.

B.    Retaliation

1.    General

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

A First Amendment retaliation claim has three elements:

(1) the plaintiff engaged in protected conduct;

(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing *Nieves*, 139 S. Ct. at 1722). "The retaliatory motive must be a 'but-for' cause to the adverse action." *Coleman*, 2020 WL 5648352, at *6 (citing *Nieves*, 139 S. Ct. at 1722).

Boykins contends that the prison librarian, Bell, acted in concert with health care manager McCauley to wrongfully deny his application for legal writer assistance in making his habeas corpus petition. (ECF No. 1, PageID.8-9). He says this was done in retaliation because he filed grievances regarding his fall and Bell told him that he should not have grieved that issue. (*Id.*).

### 2.   Application

The parties agree, as noted above, that the criteria for legal writer eligibility is if an inmate does not have a GED or high school diploma; does not read or write English; has a physical or mental impairment that may affect ability to use the law library to prepare legible and coherent pleadings; or is housed in segregation, a reception center, an inpatient medical unit, or other housing that does not allow direct access to legal materials. *See* MDOC Policy Directive 05.03.116, ¶¶ R and S, at ECF No. 34-3, PageID.369-370. Boykins requested legal writer assistance

19

because of his wrist injury that he sustained in his fall from the top bunk. (ECF

No. 1, PageID.9).

Bell received the kite from Boykins requesting a legal writer on January 5,

2018. (ECF No. 34-3, PageID.359). He provided Boykins with the proper form

for such a request, and Boykins returned the completed form on January 23, 2018.

(*Id*., PageID.359, 365). Bell assessed the non-medical portion of the form, finding

no non-medical reason that Boykins would qualify for a legal writer, and

forwarded the request to McCauley to assess whether Boykins had a medical need

for a legal writer meeting the criteria. (*Id*., PageID.360). McCauley found that

Boykins did not have a medical need for legal writer assistance, due in part to the

x-ray of Boykins' wrist that showed an old fracture and not an acute injury. (ECF

No. 34-2, PageID.236). McCauley also relied on the history of kites that Boykins

had filed following his injury that were legible and coherent. (*Id*.). Based on her

training, education, and experience, McCauley determined that Boykins' wrist

injury did not impair his ability to use the law library or file a legible pleading.

(*Id*.).

After receiving McCauley's certification, Bell denied Boykins' request on

February 6, 2018. (ECF No. 34-3, PageID.372). Boykins alleges that the denial

was in retaliation for his prior grievance. However, Bell and McCauley swear by

affidavit that the grievance or grievances filed by Boykins had no influence in their

decisions. (*Id.*, PageID.361; ECF No. 34-2, PageID.237). Bell attested that Boykins continued to use the law library on a regular basis after this denial, and that in February 2018 alone, Boykins attended 20 callouts to the law library, utilizing the computers as well as printed materials. (ECF No. 34-3, PageID.360).

The MDOC Defendants admit that Boykins was engaged in protected conduct when he filed a grievance or grievances regarding his injury and that the denial of his legal writer application could constitute an adverse action. (ECF No. 34, PageID.224). However, they argue that there is no causal connection between his protected activity and the adverse action. In addition to sworn affidavits from Bell and McCauley, they point to Boykins' x-ray as evidence that he did not suffer a new acute injury in his fall, (ECF No. 34-2, PageID.240), evidence that was relied upon by McCauley in her medical determination that Boykins did not need a legal writer. They also point to Boykins' kites, (ECF No. 34-2, PageID.241-242), and grievances, (ECF Nos. 34-4, 34-5), as evidence that his ability to use the law library was not impaired.

Boykins did not address his retaliation claim in his response. However, "[e]ven when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013); *see*

*also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380-81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.") (quoting *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). Nonetheless, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). "The court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (6th Cir. 2000) (unpublished table decision).

Here, the uncontroverted facts before the Court suggest that there was no retaliatory motive for the denial of Boykins' legal writer request. Both Defendants accused of engaging in retaliation, Bell and McCauley, have sworn otherwise. Bell appears to not have been involved with the aspect of the decision that Boykins opposes. And the reasons McCauley has proffered for her decision that Boykins' wrist injury did not establish the medical need for a legal writer are supported by the record.

To defeat a party's motion for summary judgment on retaliation, "some evidence of retaliatory motive is required: '[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim.' " *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (quoting *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)).  Retaliatory motive can be shown by direct or circumstantial evidence.  *Hill*, 630 F.3d at 475.  Circumstantial evidence might include "the disparate treatment of similarly situated individuals" or "the temporal proximity between the prisoner's protected conduct and the official's adverse action."  *Id*. at 475-76.  But the Sixth Circuit has been reluctant to find that temporal proximity "evidence alone establishes retaliatory motive."  *Id*. at 476.

Boykins has nothing more than the temporal proximity between his grievance or grievances and the legal writer denial and his unsubstantiated allegation that Bell told him that he shouldn't have filed the grievance to support his claim.  This is not enough in the face of Defendants' well-supported explanation of his denial.  Thus, Boykins has failed to sustain his burden and Bell and McCauley are entitled to summary judgment on Boykins' retaliation claim.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Defendants' motions for summary judgment, (ECF Nos. 30, 34), be GRANTED and that Boykins' claims be DISMISSED.

23

Dated: September 21, 2022                 s/Kimberly G. Altman
Detroit, Michigan                              KIMBERLY G. ALTMAN
                                                       United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

24

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 21, 2022.

                         s/Carolyn Ciesla
                         CAROLYN CIESLA
                         Case Manager